IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIFFORD LESTER, | : | CIVIL ACTION NO. **1:12-CV-0140** |
| Petitioner | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| DAVID J. EBBERT, WARDEN, | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Procedural Background.**

On January 25, 2012, Petitioner Clifford Lester, an inmate at FCI-Allenwood, White Deer, Pennsylvania, filed, *pro se*, the instant 13-page typed Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner paid the filing fee. (Doc. 4).

Named as Respondent in this habeas petition is David J. Ebbert, the Warden at FCI-Allenwood. We issued a Show Cause Order on March 7, 2012, and ordered service of Petitioner's Habeas Petition on Respondent, and directed Respondent to file his response. (Doc. 5).

On March 26, 2012, Respondent filed his Response to the habeas petition with attached unpublished case law, namely McKetterick v. Williamson, 2006 WL 1307919 (M.D. Pa. 5-10-06), and an Exhibit, BOP PS 5800.11. (Docs. 10, 10-1 to 10-2). Petitioner did not file a traverse and the time to do so has now expired.

The habeas petition is presently ripe for disposition.

## II. Claims of Habeas Petition.

Petitioner avers that he is serving a federal sentence at FCI-Allenwood following a conviction in the Southern District of New York for extortion. Petitioner states that upon arrival at FCI-Allenwood, consistent with BOP policy and procedure, he received a point score rating in the most serious category and point score partially based on an offense severity rating that relates to an intended threat or infliction of bodily harm. Petitioner avers that his convicted crime "did not involve any such mens rea." (Doc. 1, ¶ 10). Petitioner also claimed that his Presentence Investigation Report ("PSR") contained inaccurate information which was used to incorrectly score the severity of his offense on the BOP custody classification form.

Petitioner contends that he timely submitted a grievance regarding his point score through the BOP administrative remedy process. Respondent concedes that Petitioner has exhausted his administrative remedies. (Doc. 10, p. 1, n. 1). In Petitioner's grievance, he requested a correction of his Presentence Investigation Report (PSR) and that he be released. (Doc. 1, ¶ 12). Petitioner further contends that the Director on the BOP, on March 11, 2011, rendered the following decision in the BOP's Central Office Response to his grievance:

> Our investigation revealed that on November 2, 2010, staff referred the disputed information in your PSR to the United States Probation officer (USPO), Southern District of New York. The response received on November 12, 2010, from the USPO indicated they are unable to provide specific comments to the disputed information because, as it was prepared 10 years ago, they are unable to obtain a copy of the PSR and the Probation Office[r] who prepared the report is no longer with the office. The Bureau of Prisons has performed all which is required in regard to your contention. The Bureau of Prisons has no authority or obligation to take any additional action in response to your assertion.

(*Id.*, ¶ 12).

Further, the BOP directed Petitioner to address any issues he had with his sentence with the appropriate sentencing court. (*Id.*).

Petitioner argues that Respondent's actions are "arbitrary and capricious where, as here he continues to assign petitioner to a greatest severity score, in the absence of any supporting information." (*Id.*, ¶ 13).

In ¶s 14-15, Petitioner quotes 18 U.S.C. § 3621, outlining the BOP's responsibilities to persons who have been committed to custody. Further, Petitioner emphasizes the factors considered by the BOP in deciding a designation for a prisoner. Petitioner also avers that "28 C.F.R. 541.12 (1989) provides that prisoners are to be treated fairly and impartially by all Federal Bureau of Prisons personnel." (*Id.*, ¶ 16).

Petitioner alleges that "the respondent has assigned a greatest severity score to petitioner, which increased score results in a higher severity level and denial or restriction from training and rehabilitative programs which would normally apply, in the absence of proof to support such increase." (*Id.*, p. 9). Petitioner further avers that his claim is "actionable under § 2241 because he is in custody and he attacks the term of that custody." (*Id.*).

Finally, Petitioner states: "[i]t is well established that this type of case necessarily imply (sic) issues which effect petitioner's term are fundamental issues of liberty that fall within the Court's jurisdictional (sic), and the respondent's error is fundamental and can be corrected through habeas corpus. " (*Id.*).

As relief the petitioner requests that this Court issue a Writ of Habeas Corpus and direct Respondent as follows:

>    A. Ordering the respondent to annul the final administrative determination herinabove (sic) complained of;
>    B. Directing respondent to afford petitioner a de novo process, instanter (sic);
>    C. Grant to petitioner such other and further relief as the court may deem just and proper.

(*Id.*, p. 11).

To the extent Petitioner may be deemed as raising cognizable habeas claims pursuant to § 2241, this Court has jurisdiction over such action. *See Kitano v. Smith,* 2006 WL 42177, *2 (M.D. Pa. 2006) ("A habeas petition filed in the district court where the petitioner is confined provides a remedy to challenge the effect of events subsequent to imposition of his sentence.").

## III.  Discussion.

We agree with Respondent and find that Petitioner Lester's present § 2241 habeas petition should be dismissed as Petitioner's claims are not cognizable under § 2241. Respondent advances this argument in his Response, namely stating that inmates may permissibly challenge execution of their sentence, disciplinary proceedings where good time credit is lost, and disputes about BOP calculation of sentence, which all fall under the umbrella of § 2241. Respondent cites to *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005), and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). However, Respondent contends that in this case, Petitioner impermissibly challenges conditions of his confinement, which does not fall under § 2241. (Doc. 10, pp. 4-5).

As Respondent correctly indicates (*Id.*, p. 4), the *Leamer* Court stated:

> Although both § 1983 and habeas corpus allow prisoners to challenge unconstitutional conduct by state officers, the two are not coextensive either in purpose or effect. Habeas relief is clearly quite limited: 'The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally be to 'inquire into the legality of the detention . . .. Section 1983, in contrast, provides for liability on the part of any state actor who 'subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws.

*Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002) (internal citations omitted).

As analyzed under *Leamer*, Petitioner's claim sounds of challenges to the conditions of his confinement, *i.e.* his BOP security level designation and the restrictions placed upon his activities and his confinement, and not the legality of his detention or the sentence given to Petitioner.

Further, as outlined in *Preiser*, and as also cited by Respondent, Petitioner challenges conditions of his confinement, namely his BOP point score rating in the most severe category, which properly falls under a civil rights action, not § 2241.  In *Preiser* the Court opined that state prisoners had improperly filed a habeas petition as they did not challenge "the fact or duration of his physical confinement itself, and none was seeking immediate release or a speedier release from that confinement – the heart of habeas corpus."  *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973). The Supreme Court  further provided examples of improper habeas pleadings noting that:

> [i]t is clear, then, that in all those cases, the prisoners' claims related solely to the States' alleged unconstitutional treatment of them while in confinement.  None sought . . . to challenge the very fact or duration of the confinement itself. Those cases, therefore, merely establish that a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.

*Preiser*, 411 U.S. at 498-99.

Therefore, for the foregoing reasons, we agree with Respondent and will recommend that Petitioner Lester's habeas petition be dismissed for failing to state a cognizable claim in accordance with § 2241.

Respondent also states in his Response that "the petition could be construed by the Court as a civil rights action under *Bivens* challenging the conditions of his prison life." (Doc. 10, p. 6). Respondent further states that even if Petitioner's present filing is construed as a *Bivens* civil rights action, it is more appropriate to dismiss Petitioner 's habeas petition. Respondent cites to the *McKettrick* case attached to his Response. (Doc. 10-2).

We agree with Respondent that Petitioner Lester's claim regarding conditions of confinement may be appropriate in a civil rights action under § 1331, and we agree with Respondent that as in the *McKettrick* case, it is more appropriate to dismiss Petitioner's habeas petition especially in light of the great disparity between filing fees. Thus, we will recommend that Petitioner's habeas petition be dismissed for failure to state a cognizable habeas claim.

Moreover, to the extent Petitioner's claim could be construed as a claim properly brought in a *Bivens* civil rights action, we note that the claim may fail to state a viable claim because an inmate has no constitutional right to be confined under a certain custody classification and he has no right to any prison programs.

It is well settled that an inmate has no constitutional right to be confined in any particular prison, facility or rehabilitative program. *See Podhorn v. Grondolsky,* 2009 WL 3471299, *2 (3d Cir .) (Per Curiam) (citing *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d

813 (1983)); *Kimball v. Walters,* 2007 WL 87897. (M.D.Pa.) (inmate had no constitutional right to be transferred to any particular cell or to any particular prison). Also, the Court will not generally interfere with the BOP's determination as to where to confine an inmate. *See Fraise v. Terhune,* 283 F.3d 506 (3d Cir.2002); *Levi v. Ebbert,* 2009 WL 2169171, *6 (M.D. Pa.).

The Third Circuit specifically opined in *Marti* that an inmate challenging his public safety designation of "greatest severity" as erroneous was not permitted to make said challenge because he had "no due process rights to any particular security classification." *Marti v. Nash*, 227 Fed.Appx. 148, 149 (3d Cir. 2007) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274 (1976)). Further, the *Sake* Court has also stated that:

> [i]t is well settled that the BOP classification procedure is within the discretion of the Attorney General as delegated to the Director of the BOP, *see* 18 U.S.C. §4081; 28 C.F.R. § 0.96; *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979), to which inmates generally have no due process liberty interests. *See e.g. Moody supra* ("Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.").

*Sake v. Sherman*, 2007 WL 2254529, *4 (W.D. Pa.); *Milhouse v. Bledsoe*, 2011 WL 332417, *6 (M.D. Pa. 1-31-11)("The Bureau of Prisons retains sole discretion over where to place an inmate.")(citing 18 U.S.C. §3621).

Finally, it is well-settled that an inmate has no constitutional right to participation in any prison program or employment. *See Milhouse v. Bledsoe*, 2011 WL 332417, *9.

Therefore, to the extent Petitioner's claim challenging his offense severity rating and point score by the BOP for purposes of determining his custody classification score is construed as a claim

7

under *Bivens*, we find that Petitioner fails to state a viable constitutional claim.

### IV. Recommendation.

Based upon the foregoing, it is respectfully recommended that Petitioner Lester's Petition for Writ of Habeas Corpus (**Doc. 1**) be dismissed for failure to state a cognizable claim.

>  **s/ Thomas M. Blewitt**
>  **THOMAS M. BLEWITT**
>  **United States Magistrate Judge**

**Dated: June 27, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIFFORD LESTER, | : | CIVIL ACTION NO. **1:CV-12-140** |
| | : | |
| Petitioner | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DAVID J. EBBERT, WARDEN, | : | |
| | : | |
| Respondent | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing Report and Recommendation dated **June 27, 2012**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                          **s/ Thomas M. Blewitt**
                                                          **THOMAS M. BLEWITT**
                                                          **United States Magistrate Judge**

**Dated: June 26, 2012**